IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-2601-K |
| | § | |
| ELISHA COLLINS a/k/a ELISHA | § | |
| COLLINS SALTER, individually, and | § | |
| d/b/a SNOOKIE'S EVENTS &  MORE, | § | |
| d/b/a SNOOKIE'S BAR & GRILL, and | § | |
| d/b/a SNOOKIE'S; and | § | |
| CEDRICK WAYNE SALTER, a/k/a | § | |
| WAYNE SALTER, individually and d/b/a | § | |
| SNOOKIE'S EVENTS &  MORE, | § | |
| d/b/a SNOOKIE'S BAR & GRILL, and | § | |
| d/b/a SNOOKIE'S, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Final Default Judgment Against Defendant Cedrick Wayne Salter a/k/a Wayne Salter (Doc. No. 28) and Appendix in Support (Doc. No. 29) (together, the "Motion"). The Court has carefully considered the Motion, the relevant portions of the record, and the applicable law. The Court **GRANTS** the Motion for the following reasons.

I.    Factual and Procedural Background

By written agreement, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") held the exclusive commercial license to distribute and authorize the public exhibition of the audiovisual closed-circuit broadcast of the following boxing matches—the *Errol Spence*

1

*Jr. vs. Danny Garcia* boxing match, including all undercard bouts and commentary, on December 5, 2020 (the "Spence-Garcia Event") and the *Floyd Mayweather vs. Logan Paul* boxing match, including all undercard bouts and commentary, on June 6, 2021 (the "Mayweather-Paul Event") (together with the Spence-Garcia Event, the "Events"). Doc. No. 1 at 2, 4. Plaintiff alleges that, on the dates of the Events, Defendant Cedrick Wayne Salter, a/k/a Wayne Salter, individually, and d/b/a Snookie's Events & More, d/b/a Snookie's Bar & Grill, and d/b/a Snookie's ("Defendant Salter"): conducted business as "Snookie's Events & More", "Snookie's Bar & Grill", and "Snookie's"; owned, operated, maintained, and controlled the commercial establishment at 4041 W. Wheatland Rd., Suite 152, Dallas, Texas (the "Establishment"); and supervised and had a direct financial interest in the Establishment's activities. *Id.* at 3-4.

Even though the Events were legally available to Defendant Salter, Plaintiff alleges that Defendant Salter chose not to pay the sublicense fees to exhibit the Events at the Establishment. *Id.* at 4-5. Instead, on the dates of the Events, Defendant Salter (himself and/or through his agents, servants, and/or employees) took affirmative steps to circumvent the commercial sublicensing requirement for each of the Events and unlawfully obtained the Events via satellite signals or, in the alternative, via cable signals, whether by misuse of television services, internet, or other devices. *Id.* Plaintiff alleges that Defendant Salter did not broadcast either Event for private viewing or for residential, non-commercial purposes. *Id.* at 6. According to Plaintiff, Defendant Salter intentionally pirated and then exhibited the Events at the Establishment for its

2

patrons for economic gain and without paying Plaintiff the proper fee for either Event. *Id.* at 5-6.  Plaintiff alleges that Defendant Salter did not have license, authorization, permission, or consent from Plaintiff to exhibit the Programs in the Establishment. *Id.* at 6.

Plaintiff thereafter filed this action on November 24, 2023, alleging violations of 47 U.S.C. § 553 (Cable) and § 605 (Satellite).  *See id.* at 7.  Plaintiff encountered difficulty serving Defendant Salter and filed multiple motions for substituted service and extensions of time in which to serve Defendant Salter, all of which the Court granted.  *See, e.g.,* Doc. Nos. 7, 10, 11, 13, 14, 16.  Defendant Salter was finally served with a copy of the Summons and Complaint on March 12, 2024 (Doc. No. 20). The record establishes that, to-date, Defendant Salter has failed to answer or respond to Plaintiff's Complaint, and has not otherwise appeared to defend in this matter. Plaintiff filed its Request for Entry of Default (Doc. No. 25) against Defendant Salter which the Clerk then entered (Doc. No. 26).  Plaintiff now moves for final default judgment against Defendant Salter and requests statutory damages pursuant to 47 U.S.C. § 605 along with its attorneys' fees and costs.  (On September 23, 2024, Plaintiff dismissed named Defendant Elisha Collins, a/k/a Elisha Collins Salter, individually, and d/b/a Snookie's Events & More, d/b/a Snookie's Bar & Grill, and d/b/a Snookie's.)

**II.     Analysis**

By entering default judgment, "conduct on which liability is based may be taken as true as a consequence of the default." *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *1 (N.D. Tex. Apr. 22, 2014)(Boyle, J.) (quoting *Frame v. S—H Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)) (quotation marks omitted). The court accepts the well-pleaded allegations of facts in the complaint as true when considering a motion for default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

First, after careful review of the record, the Court finds the prerequisite elements for entering a default judgment are met. The record establishes that Defendant Salter is not a minor, is not an incompetent person, and is not currently serving in the military. *See* FED. R. CIV. P. 55(b)(2); 50 App. U.S.C. § 521(a),(b)(1)(A)-(B)). Further, the Court has jurisdiction over this matter and these parties.

The Court turns now to determining whether default judgment should be entered. *See Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *1 (courts conduct a two-step process in deciding whether a default judgment should be entered). First, the Court must consider whether the entry of default judgment is appropriate under the circumstances. *Id.* Second, the Court must address the merits of Plaintiff's claims and determine if there is sufficient basis in the pleadings for the default judgment. *Nishimatsu Constr. Co.*, at 1206.

### A. Entry of default judgment is appropriate

In determining if default judgment against a party is appropriate, the court considers six factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Applying the *Lindsey* factors to this case, the Court finds default judgment against Defendant Salter is proper here. *See id.*; *see also Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *1.

There are no material issues of fact in dispute. Despite receiving proper service, Defendant Salter has not responded to Plaintiff's Complaint nor any other pleadings in this case, including Plaintiff's Motion for Final Default Judgment. Further, Defendant Salter has had ample time to respond to the Complaint or otherwise appear in this case to defend. The grounds for default are clearly established. Defendant Salter has not been prejudiced in any way in this case. There is nothing before the Court to indicate that Defendant Salter's default was caused by a good faith mistake or excusable neglect. The Court is also unaware of any facts from this case that would give the Court reason to set aside the default if Defendant Salter challenged the judgment. The application of the *Lindsey* factors weighs substantially in favor of granting default

judgment against Defendant Salter.  The entry of default judgment against Defendant Salter is appropriate under these circumstances.

### B. Sufficient basis in the Complaint for Plaintiff's claims.

After considering whether entry of default judgment is appropriate under the circumstances, the Court must determine if there is a sufficient basis for Plaintiff's claims as alleged in the Complaint (Doc. No. 1).  *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.  By his default, Defendant Salter is deemed to have admitted the allegations from Plaintiff's Complaint.  *See Frame*, 967 F.2d at 205 ("[C]onduct on which liability is based may be taken as true as a consequence of the default.").

Section 553 is violated by "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization.  § 553(a); *see Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *3 (finding that the complaint established a violation of § 553 with allegations that the defendants intercepted and broadcast boxing matches without authorization).  Section 605 is violated when one "intercept[s] any radio communication . . . receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto."  § 605(a); *see Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *3 (concluding that the pleadings established a viable claim based on a violation of § 605 with allegations that the defendants intercepted and broadcast boxing matches without authorization).

Plaintiff alleges that Defendant Salter illegally intercepted and broadcast cable or satellite transmissions when he exhibited the Events on their respective dates thereby violating both 47 U.S.C. §§ 553 and 605. Defendant Salter is alleged to have shown both of the Events to patrons without authorization, license, or permission to do so from Plaintiff, the exclusive licensee to the commercial distribution of the Event. Plaintiff's Complaint alleges that Defendant Salter did not contract with Plaintiff and did not pay the proper commercial, non-residential sublicense fee to Plaintiff to exhibit the Events at the commercial Establishment. Plaintiff's Complaint specifically alleges that, on the dates of the Events, Defendant Salter (himself or his agent/servant/employee) unlawfully obtained the Events "via satellite signals or, in the alternative, via cable signals, whether by misuse of television services, internet, or other devices" and exhibited the Events at the Establishment without paying the proper commercial sublicense fees to Plaintiff.

"[C]ircumstantial evidence can support a finding that a communication was intercepted, even absent direct evidence." *See DIRECTTV, Inc. v. Robinson*, 420 F.3d 532, 537 (5th Cir. 2005). Plaintiff's Complaint establishes that it had the exclusive right to license broadcasts of the Events, that Defendant Salter wrongfully intercepted and/or received both of the Events for free or at a nominal costs (or assisted in doing so), and that Defendant Salter broadcast the Events to patrons at the commercial Establishment for economic gain and without proper license, authorization, or permission from Plaintiff to do so. *See, e.g.,* Doc. No. 1 at 2-6; *see also* Doc. No. 28 at

7

10-12. This is sufficient to establish Defendant Salter's liability under both § 553 and § 605. *See J&J Sports Prods., Inc. v. Chance Club Corp.*, Civ. Action No. 4:10-CV-294-Y, 2011 WL 2909885, at *3 (N.D. Tex. July 20, 2011)(Means, J.).

### III. Damages, Attorney's Fees, and Costs

Plaintiff seeks statutory damages, not actual damages, against Defendant Salter pursuant to § 605. *See* § 605(e)(3)(C)(i) (providing that a party may elect either statutory damages or actual damages); *see also Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *3 ("Although Defendants likely violated both §§ 553 and 605, Joe Hand cannot recover under both provisions. The Court will therefore focus only on the award of damages under § 605 because it allows for greater recovery by Joe Hand.") (citations omitted). Statutory damages under Section 605 must be awarded in an amount "not less than $1,000 or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II).

Plaintiff seeks an award of $10,000, which is the statutory maximum, for each of the unlawful exhibitions—the Spence-Garcia Event and also the Mayweather-Paul Event. Based on this record, a venue such as the Establishment, which has an approximate maximum occupancy of 50 people, *see* Doc. No. 29-15 at 84, would have been subject to pay a sublicensing fee to Plaintiff of $560.00 for the Spence-Garcia Event, *see id.* at 82, and $525.00 for the Mayweather-Paul Event, *see id.* at 83. Plaintiff submitted the affidavit Joseph P. Hand, III ("Mr. Hand"), Plaintiff's President. *Id.* at 44-50 in support of its request for damages. Mr. Hand states that the piracy of

8

broadcasts by unauthorized and unlicensed commercial venues, such as the Establishment which is owned, operated, maintained, and/or controlled by Defendant Salter, causes Plaintiff to lose millions of dollars of revenue, causes financial loss to its authorized commercial and non-commercial customers, and causes Plaintiff to lose customers. *See, e.g., id.* at 48-50. Mr. Hand maintains that Plaintiff's "programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the Dallas, Texas area." *Id.* at 49. Mr. Hand also emphasizes that Defendant Salter's patrons paid $10.00 cover charge to watch the unlawful broadcast of the Mayweather-Paul Event at the Establishment which has 15 televisions. *Id.* at 47; *see id.* at 84 (affidavit of Plaintiff's Auditor that he paid $10.00 cover charge to enter the Establishment and watch the Mayweather-Paul Event). Plaintiff also submits evidence of Defendant Salter's multiple social media posts advertising the Spence-Garcia Event being shown at the Establishment for a $10.00 cover charge. *See, e.g., id.* at 9-25; *see also id.* at 27.

In making this damages determination, the Court has carefully considered the Motion, including the evidence submitted by Plaintiff, and is mindful of the need to deter future violations. *See* Doc. No. 28 at 18 (identifying types of damages suffered by Plaintiff and factors related thereto); *see also* Doc. No. 29 at 84 (Plaintiff's Auditor paid a $10 cover charge to enter the Establishment for the Mayweather-Paul Event, opines that the approximate capacity is 50 people, observed 15 TVs, and took three head counts while there—4 people, then 3 people, and finally 4 people); *id.* at 82 (rate card for the Spence-Garcia Event reflects $560 sublicense fee for commercial

9

establishments with 50-person occupancy); *id.* at 83 (rate card for the Mayweather-Paul Event reflects $525 sublicense fee for commercial establishments with occupancy of 0-50). On this record, the Court finds the following to be an appropriate award of statutory damages pursuant to § 605(e)(3)(C)(i)(II)—$2,000 for the Spence-Garcia Event and $1,500 for the Mayweather-Paul Event.

A party is entitled to additional damages under 47 U.S.C. § 605(e)(3)(C)(ii) if the defendant is determined to have "willfully" violated Section 605. If the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court, in its discretion, may increase the damages awarded by an amount of not more than $100,000. 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff seeks $50,000 in additional damages because of Defendant Salter's alleged willful violation of Section 605. Plaintiff asserts that the transmissions of both Events were intentionally done for financial gain and that Defendant Salter could not have "mistakenly, innocently, or accidentally intercepted" the transmission of these Events. Doc. No. 29 at 49. Plaintiff contends that Defendant Salter "specifically and willfully acted to illegally intercept the transmission of the [Events] for Defendant [Salter]'s commercial advantage" and that Defendant Salter could not have "innocently accessed the broadcasts of the [Events]." Doc. No. 28 at 20. Plaintiff also asserts that "Defendant [Salter] knew or should have known that it was wrong to receive, intercept, and divert the scrambled signals of the Programs and to broadcast the Programs in Defendant [Salter]'s commercial Establishment." *Id.* at 21. Even though there is no

10

direct evidence of willfulness by Defendant Salter, courts have found similar reasoning to that offered by Plaintiff as sufficiently establishing a "willful" violation of Section 605. *See, e.g., Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002) (finding Section 605 was "willfully" violated because of the "limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance . . . ."); *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, Civ. Action No. 3:16-CV-01889-M, 2017 WL 373478, at *4 (N.D. Tex. Jan. 26, 2017)(Lynn, CJ) (same); *Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *5 (finding the argument that the "[d]efendants could not have innocently accessed the broadcast of the Event" persuasive when determining whether the defendants "willfully" violated Section 605) (quotation marks omitted). This Court finds the analysis of these courts to be well-reasoned and concludes that Defendant Salter willfully violated Section 605.

Plaintiff requests an award of $50,000 in additional damages, which is five times the amount Plaintiff requested as base statutory damages. *Cf. Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *5 ("Though there is little guidance how the Court should weigh certain factors when calculating additional damages, many courts have applied [] multipliers of three to five when faced with a defendant who broadcast an event willfully for his own commercial benefit."). As previously explained, the Court found on this record that an appropriate statutory award is $2,000 for the Spence-Garcia Event and $1,500 for the Mayweather-Paul Event, not the $10,000 requested by

11

Plaintiff for each of those violations. The Court has taken into account the base statutory awards the undersigned has concluded to be appropriate and has carefully considered the evidence submitted by Plaintiff and any relevant factors. *See J&J Sports Prods., Inc. v. River Park Sports Bar, Inc.*, 2016 WL 6398491, at *9 (S.D. Tex. Oct. 28, 2016) (identifying the factors courts consider "in determining whether a defendant's willful conduct justifies enhanced damages").

On this record, the Court finds that additional damages under § 605(e)(3)(C)(ii) in an amount three times the base statutory damages is reasonable—$6,000 for the Spence-Garcia Event and $4,500 for the Mayweather-Paul Event.

In addition to damages, Plaintiff is also entitled to recover its reasonable attorneys' fees and court costs that it incurred during the prosecution of this case. *See* § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). The Court has carefully reviewed the affidavit of Jamie King, counsel for Plaintiff in this matter, and the supporting documentation for the requested attorneys' fees and costs. Doc. No. 29 at 89-100. The Court concludes that Plaintiff establishes that the requested attorneys' fees of $3,550.00—calculated at a rate of $250/hour for a total of 14.2 hours—is reasonable. *See Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) (awarding attorneys' fees under § 605(e)(3)(B)(iii) where the plaintiff, through the affidavit of its counsel, established the fees were reasonable). The Court also finds that Plaintiff is entitled to recover its costs totaling $877.00. *See id.*

Finally, the Court concludes that Plaintiff is entitled to post-judgment interest at the rate of 4.19%, the current published rate. *See* 28 U.S.C. § 1961.

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff Joe Hand Promotions, Inc.'s Motion for Final Default Judgment against Defendant Cedrick Wayne Salter a/k/a Wayne Salter (Doc. No. 28). A separate default judgment will be entered. Plaintiff is entitled to recover the following damages from Defendant Salter: $2,000 for the Spence-Garcia Event and $1,500 for the Mayweather-Paul Event (totaling $3,500) in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $6,000 for the Spence-Garcia Event and $4,500 for the Mayweather-Paul Event (totaling $10,500) in additional damages pursuant to § 605(e)(3)(C)(ii); $3,550.00 in reasonable attorney's fees; $877.00 in costs; and post-judgment interest at 4.19%.

**SO ORDERED.**

Signed January 14th, 2025.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE